```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

MELVA CORTEZ AND ROBERT CORTEZ                           CIVIL ACTION

V.                                                       NO. 15-617

DEPUY ORTHOPAEDICS, INC.                                 SECTION "F"

                            ORDER AND REASONS

Before the Court is the defendant's motion for summary judgment. The sole question presented is whether the plaintiffs' claims are time barred. Answering in the negative, the motion is DENIED.

                              **Background**

This product liability action arises from the alleged malfunction of surgical "bone cement" used in Melva Cortez's knee replacement surgery. According to Cortez, the bone cement failed to integrate properly, causing her prosthetic knee to loosen shortly after the surgery. DePuy Orthopaedics, Inc. manufactures the bone cement.

Cortez underwent total knee replacement surgery on her left knee in December of 2011. Only a few months later, in March of 2012, Cortez began to experience pain and discomfort in the same knee. She endured the pain for nearly 18 months until scheduling an appointment with orthopedic surgeon Dr. Chad Millet on November 5, 2013. At that appointment, Dr. Millet examined the plaintiff's

1

prosthetic knee and found that the tibial component was loose. Dr. Millet informed Cortez that she would need revision surgery.

Cortez saw Dr. Millet again on January 14, 2014. Dr. Millet tested her knee for infection and discussed the risks and benefits of revision surgery. The next month, on February 28, 2014, Dr. Millet performed the revision surgery. In the operative report from the surgery, Dr. Millet explained, "Exam of the tibial component demonstrated that it was loose and this was easily pulled out without any difficulty. The cement on the medial tibial plateau had not integrated."

The plaintiffs sued DePuy on February 26, 2015, almost one year after her surgery. Melva Cortez seeks damages under the Louisiana Products Liability Act. Richard Cortez, Melva's husband, seeks damages for loss of consortium.

DePuy moves for summary judgment on the grounds that Cortez's claims under the Louisiana Products Liability Act have expired. According to the defendant, the one-year prescriptive period began to run against Cortez on November 5, 2013, when Dr. Millet informed her that the tibial component of her prosthetic knee was loose and that she would require revision surgery. Alternatively, the defendant contends that the prescriptive period commenced on January 14, 2014, when Dr. Millet tested Cortez's knee for infection and discussed the consequences of the February 28, 2014 surgery. In either case, the defendant urges that the one-year

prescriptive period expired before Cortez filed suit on February 26, 2015.

The plaintiffs respond that prescription did not commence until Dr. Millet performed the revision surgery and discovered that the bone cement was the cause of Cortez's knee failure.

Resolution of this motion requires the Court to determine when, under Louisiana law, the one-year prescriptive period began to run against Cortez.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Finally, in

evaluating a summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Id. at 255.

II.

Under Louisiana law, a claim for damages arising from a defective product has a prescriptive period of one year. La. C.C. art. 3492. "This prescription commences to run from the day injury or damage is sustained." Id. The defendants insist that prescription commences at "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." Eldredge v. Martin Marietta Corp., 207 F.3d 737, 743 (5th Cir. 2000).

However, the doctrine of *contra non valentem* prevents the running of prescription "[w]here the cause of action is not known nor reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." Fontenot v. ABC Ins. Co., 95-1707 (La. 06/07/96); 674 So. 2d 960, 963; see Marin v. Exxon Mobil Corp., 2009-2368 (La. 10/19/10); 48 So. 3d 234, 245. The doctrine applies only in "exceptional circumstances;" that is, "a plaintiff will be deemed to know what he could by reasonable diligence have learned." Marin, 48 So. 3d at 245 (quoting Renfroe v. State ex rel. Dept. of Transp. and Development, 01-1646 (La. 2/26/02); 809 So. 2d 947, 953). Nonetheless, "[p]rescription does not run against one who is ignorant of facts upon which his cause of action is

4

based as long as such ignorance was not willful, negligent, or unreasonable." Fontenot, 674 So. 2d at 965.

Both parties rely on the Fifth Circuit's interpretation of Louisiana's rules of prescription in Carter v. Matrixx Initiatives, Inc., 391 Fed. Appx. 343 (5th Cir. 2010). In the context of medical causation, the Court instructs that "even if a plaintiff is aware that an undesirable condition developed at some point in time after medical treatment, prescription does not run until the plaintiff has actual or constructive notice of the causal connection between the medical treatment and subsequent condition." Id. (quoting Sharkey v. Sterling Drug, Inc., 600 So. 2d 701, 713 (La. App. 1 Cir. 1992)). The Court writes:

> Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury. When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.

Id. (quoting Jordan v. Employee Transfer Corporation, 509 So. 2d 420, 423 (La. 1987)); See also Sharkey, 600 So. 2d at 714. "When a plaintiff alleges the affirmative defense of *contra non valentem*, the defendant must show 'that the plaintiff had actual or constructive notice of the tortious act, the resulting injury, and

5

the causal connection between the two . . . .'" Id. (quoting Sharkey, 600 So. 2d at 713-14).

In Carter, the Fifth Circuit held that the prescriptive period had run against a plaintiff who brought suit more than one year after her injury. The plaintiff experienced immediate pain and loss of her senses of smell and taste after using a Zicam nasal medication on February 23, 2007. She filed suit on February 29, 2008 asserting *contra non valentem*. The Court rejected her defense finding that although the exact cause of her injury was not confirmed by doctors until months later, she had actual knowledge of pain and sensory loss on the day she used the Zicam. Moreover, she suspected and attributed her injury to the Zicam from the very outset. Thus, the Court concluded that prescription commenced on the date of the injury.

Cortez relies heavily on the Louisiana Supreme Court case, Cole v. Celotex Corp. 620 So. 2d 1154 (La. 1993). There, the state's high court held that the plaintiff's asbestos claim had not prescribed because, although he was aware that he had a lung condition for several years, he filed suit within one year of being officially diagnosed with asbestosis. Beginning in 1982, the plaintiff's annual chest x-rays showed calcification and pleural thickening of his lungs. He was told to stay away from asbestos. After his exam in 1983, the plaintiff was referred to two outside doctors. Both doctors recognized the potential of asbestos related

6

lung disease, but were unable to rule out alternate causes. In December of 1985, the plaintiff took his chest x-rays to a new doctor who diagnosed him with asbestosis. The plaintiff filed suit within one year of his diagnosis. Applying the doctrine of *contra non valentem*, the Louisiana Supreme Court concluded that the plaintiff's claims had not prescribed because he could not be chargeable with knowledge of his asbestosis until December of 1985.

Equipped with Louisiana's rules of prescription, the Court turns to the facts presented here.

### III.

Cortez first experienced pain in her knee in March of 2012. Her first visit with orthopedic surgeon Dr. Millet was on November 5, 2013. At that appointment, Dr. Millet informed Cortez that the tibial component of her prosthetic knee was loose and that she needed revision surgery. She saw Dr. Millet again on January 14, 2014. Cortez confirmed in deposition testimony that she knew a revision was necessary by November 5, 2013.

The defendant contends that prescription commenced on November 5, 2013 (or January 14, 2014 at the latest), when Cortez knew that her prosthetic knee was loose and that she needed revision surgery. Cortez responds that despite this knowledge, she had no actual or constructive notice that DePuy's bone cement caused the loosening. Absent her knowledge of the tortious act or cause of her injury, Cortez urges that the prescriptive period

7

commenced when Dr. Millet discovered during her revision surgery that the bone cement had not properly integrated. The Court agrees.

In deposition testimony, Dr. Jason Higgins, the doctor who performed Cortez's initial surgery, stated that the loosening of a prosthetic knee could stem from multiple causes. When asked if it would be "unexpected" for a component to come loose only four months after a surgery, Dr. Higgins replied, "Yeah. I mean, essentially it still doesn't mean that anything was done wrong or the cement was bad or the components were bad or the surgeon was bad or the activity was bad, it just means, you know, that that was – that's quick." Likewise, although Dr. Millet was able to identify the loose tibial component in November of 2013, nothing in the record suggests that he knew the cause of the loosening at that time. Indeed, it appears that Dr. Millet first wanted to rule out the possibility of infection as the cause.[1] The record reflects that Cortez and her doctors were more concerned about finding a remedy than attributing blame. This is a reasonable course of action.

The facts of this case resemble those in Cole v. Celotex. Like the plaintiff in Cole, who was aware of health concerns with

---

[1] Dr. Millet stated during his deposition, "You have to rule out infection because infection is a great mimicker. It can cause a lot of these things." This statement is consistent with his decision to test Cortez for infection on January 14, 2014 before proceeding with the revision surgery.

8

his lungs but had not been properly diagnosed, Cortez was aware that her initial knee surgery failed but was unaware as to why. Only once Dr. Millet performed the revision surgery and discovered that the bone cement had not properly integrated could the plaintiff have known of the tortious act.

Moreover, this record differs significantly from the facts in Carter v. Matrixx. There the plaintiff's injury from her use of Zicam was immediate. Even more, she immediately suspected that Zicam was the cause of her injury. Here, there was no singular day that the injury occurred. Cortez knew that something went wrong with her surgery, but she had no way of knowing who, if anyone, to blame. Applying the defendant's theory, Cortez would be required to sue her doctors, the hospital, the manufacturers of the prosthetic knee and its component parts, and any other *possible* tortfeasor before even knowing whether a tort was committed. The purpose of *contra non valentem* is precisely to avoid this absurdity. See Carter, 391 Fed. Appx. at 343 ("Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage.")(quoting Jordan, 509 So. 2d at 423).

Because Melva Cortez lacked actual or constructive notice of the causal connection between the bone cement and her failed surgery, prescription did not commence until that connection could be made: February 28, 2014. The plaintiffs filed this lawsuit on

9

February 26, 2015. Accordingly, the plaintiffs' complaint was filed within the one-year prescriptive period.

Thus, IT IS ORDERED that the defendant's motion for summary judgment is DENIED.

New Orleans, Louisiana, February 17, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE